IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI

| | | |
|---|---|---|
| GOLDEN RULE FASTENERS, INC., | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 3:17-cv-00249-MPM-JMV |
| THE NEVERLEAK COMPANY, LP, | § § | Judge: Hon. Michael P. Mills |
| Defendant. | § § | Complaint Filed: December 12, 2017 |

### THE NEVERLEAK COMPANY, L.P.'S MEMORANDUM IN SUPPORT OF MOTION TO STAY LITIGATION

**I.      INTRODUCTION**

Due to uncertainty in the patent claim terms at issue in this case and the meanings of those terms based on continuing examination and denials by the Patent Office of one of the patents in this case that impacts all three patents in this case, Defendant The Neverleak Company, LP ("Neverleak") respectfully requests that the Court stay the current litigation in view of parallel proceedings regarding the validity and scope of the claims of asserted U.S. Patent Nos. 8,141,303 ('303 patent), 8,464,475 ('475 patent), and 8,534,002 ('002 patent) (collectively, the "Asserted Patents"). In 2015, Golden Rule asked the Patent Office to broaden the scope of the claims of the '002 patent, but the Patent Office has repeatedly rejected these efforts, and in recent correspondence to Golden Rule, it indicated that the '002 patent claims should be narrowed.

Counsel for Neverleak has also informed Golden Rule that third-party manufacturer of the accused products, Aztec Washer Company ("Aztec"), will file *ex parte* reexaminations of the claims of each of the Asserted Patents in the next two to three weeks. The Patent Office grants

92% of requests for *ex parte* reexamination. Thus, it is highly likely that the reexaminations requested will be granted and the outcome of these proceedings is that the claims are highly likely to be amended or deemed invalid. It is and will be a complete waste of judicial resources, and the parties' time and efforts, to undertake claim construction when the claim terms are changing and the interpretation of them will be impacted based on any future comments by Golden Rule and the Patent Office during examination. The Court would likely have to re-litigate and re-argue claim construction and other patent issues depending on the final scope of the asserted patent claims, assuming such claims are not found invalid. Accordingly, a stay should be granted.

## II. THE ASSERTED PATENTS

As part of the same patent family, all three Asserted Patents share similar structures in the claim terms at issue in this case. The '303 patent has one independent claim describing a particular configuration of roof flashing with a "longitudinal opening" that can be spread open to wrap around and seal a pipe protruding through a roof.[1] The roof flashing claimed in independent claim 1 of the '303 patent includes, among other limitations, a "foot" that attaches to the surface of a roof, a "base" that is located above the "foot", and a "collar" that is located above the "base." Each of the "foot," "base", and "collar" is made of "elastomeric material" to facilitate proper sizing of the roof flashing depending on the roofing application. Figure 1 in each of the Asserted Patents shows a "foot" (identified as 101), "base" (identified as 104), "collar" (identified as 102), and "longitudinal opening" (identified as 106):

---

[1] The patent application for the '303 patent was filed on October 23, 2009. Mot., Ex. 1.



FIG. 1

The '475 patent and '002 patent are "continuations" of the '303 patent application, having been filed after the "parent" '303 application, sharing a common specification, and claiming priority of their respective dates of invention to the '303 patent October 23, 2009 filing date. *See* Mot., Ex. 2 and 3. *See also Wi-LAN USA, Inc. v. Ericsson, Inc.*, 675 F. App'x 984, 987 n.2 (Fed. Cir. 2017) ("Because the [child] patent is a continuation of the [parent] patent, the Bandwidth Patents share a common specification. A continuation patent application is an application filed subsequently to another application, while the prior application is pending, disclosing all or a substantial part of the subject-matter of the prior application and containing claims to subject-matter common to both applications, both applications being filed by the same inventor or his legal representative") (internal quotes omitted).

Similar to the '303 parent patent claims, the '475 patent has claims which each also include a "foot," "base", and "collar", and a "longitudinal opening." Likewise and similar to the

parent '303 patent, the '002 patent has claims with a "foot," "base", "collar", and a "longitudinal opening." Thus, the claim language of the Asserted Patents overlaps, and issues concerning the invalidity and scope of those claims should be treated together.

### III. PROCEEDINGS IN THE UNITED STATES PATENT OFFICE

#### A. Golden Rule's Reissue Application for the '002 Patent.

On September 16, 2015, Golden Rule filed a request with the Patent Office to obtain a "reissue" of the '002 patent in order to broaden the scope of the claim terms.[2] Mot., Ex. 4 (Reissue Application). For instance, Golden Rule proposed adding the underlined language below and proposed deleting the bracketed language where such bracketed language is what was asserted against Neverleak in the instant litigation:

AMENDMENTS TO THE CLAIMS

1. (Amended) A roof flashing comprising:

a collar[, the collar having a conical shape with an apex and a bottom edge] having a
    collar top and a collar bottom,;

a [substantially cylindrical] base[, the base having a top edge and a bottom edge, the top
    edge of the base coupled to the bottom edge of the collar, the bottom edge of the
    base having a diameter larger than a diameter of the top edge of the base] having a
    base top edge and a base bottom edge, wherein the base top edge is coupled to the
    collar bottom and the base extends downwardly from the collar bottom to the base
    bottom edge;

---

[2] Under 35 U.S.C. § 251(d), a request to broaden the scope of patent claims must be made "within two years from the grant of the original patent." The '002 patent issued on September 17, 2012.

4

a foot coupled to the <u>base</u> bottom edge [of the base] and extending outwardly from the <u>base</u> bottom edge [of the base]; and

a longitudinal opening extending from the [apex of the] collar <u>top</u> to [an edge of] the foot <u>edge</u> [via the base],

wherein the longitudinal opening includes first, second, and third sections,

wherein the first section of the longitudinal opening traverses a portion of the collar from [the apex to the bottom edge of the collar, the first section disposed at a first angle] <u>the collar top to the collar bottom at a point where the collar bottom edge is coupled to the base top edge,</u>

wherein the second section of the longitudinal opening traverses a portion of the base from [the top edge of the base to the bottom edge of the base, the second section disposed at a second angle that is different than the first angle] <u>the base top edge to the base bottom edge at a point where the bottom edge of the base is coupled to the foot,</u>

wherein the third section of the longitudinal opening traverses a portion of the foot from [the bottom edge of the base to the edge of the foot, the third section disposed at a third angle that is different than the first and second angles] <u>the point where the base bottom edge is coupled to the foot to the foot edge, and,</u>

5

> wherein the longitudinal opening has first and second edges[, and
>
> wherein a width of the longitudinal opening increases when the first and second edges are
>> pulled away from each other to enable the roof flashing to be installable around a pipe which is not capable of receiving the roof flashing over a top thereof] <u>such that when the first and second edges are pulled away from each other a width of the longitudinal opening increases to enable the roof flashing to be installable around a pipe which is not capable of receiving the roof flashing over a top thereof.</u>

*See id.* at Preliminary Amendment, pp. 2-3.

In the Invalidity Contentions ("Contentions") that it served on Golden Rule, Neverleak identified deficiencies in how the patent specification failed to sufficiently explain the meaning of certain asserted claim language in the '002 patent such as "first section disposed at a first angle," "second angle that is different than the first angle," and "third angle that is different than the first and second angles." *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1332 (Fed. Cir. 2005) ("a claim should be interpreted both from the perspective of one of ordinary skill in the art and in view of the state of the art at the time of invention"). As Neverleak explained in its Contentions, positions taken by Golden Rule during the ongoing patent prosecution of the '002 patent may be relevant to these issues.

On June 8, 2018, the Patent Office issued a Final Rejection rejecting all of the proposed claim amendments to the '002 patent, stating:

> After evaluating said record, the examiner is not convinced that the claimed invention is patentable because, as discussed above, (a) claims 1, 26, and 27 are broader in scope than original claim 1, (b) the broader aspects (i.e., not requiring that the angles of the three sections are different from each other) relate to the surrendered subject matter, and (c) the claims were not materially narrowed . . . .

Mot., Ex. 5 (Final Rejection on Reissue Application). In short, the Examiner correctly noted that Golden Rule was improperly trying to broaden the scope of the claims despite surrendering that broader scope during the original prosecution of the '002 patent in order to obtain the '002 patent.

On August 7, 2018, Golden Rule asked the Patent Office to continuing reviewing its reissue application through a procedure known as a Request for Continued Examination ("RCE"). *See* 37 C.F.R. 1.114(a) ("If prosecution in an application is closed, an applicant may request continued examination of the application"). In its RCE, Golden Rule again proposed many amendments to the claim language of the '002 patent. For instance, Golden Rule proposed adding claim language (additions shown underlined below) and proposed deleting language that had been asserted in this case (existing language shown in brackets):

### AMENDMENTS TO THE CLAIMS

**Listing of Claims:**

This listing of claims will replace all prior versions, and listings, of claims in the application:

1. (Thrice Amended) A roof flashing comprising:

   a collar[, the collar having a conical shape with an apex and a bottom edge] having a collar top and a collar bottom;

7

a [substantially cylindrical] base[, the base having a top edge and a bottom edge, the top edge of the base coupled to the bottom edge of the collar, the bottom edge of the base having a diameter larger than a diameter of the top edge of the base] having a base top edge and a base bottom edge, the base having a first side with a length longer than a length of a second side opposite the first side, with the lengths measured from the base top edge to the base bottom edge, wherein the base top edge is coupled to the collar bottom and the base extends downwardly from the collar bottom to the base bottom edge;

a foot coupled to the base bottom edge [of the base] and extending outwardly from the base bottom edge [of the base] to a foot edge, said foot extending outwardly at an angle with a front portion of the foot extending downwardly from the base and a back portion of the foot extending upwardly from the base; and

a longitudinal opening extending from the [apex of the] collar top to [an edge of] the foot edge [via the base],

wherein the longitudinal opening includes first, second, and third sections,

wherein the first section of the longitudinal opening traverses a portion of the collar from [the apex to the bottom edge of the collar, the first section disposed at a first angle] the collar top to the collar bottom at a point where a collar bottom is coupled to the base top edge,

wherein the second section of the longitudinal opening traverses a portion of the base from the collar bottom [top edge of the base] to [the bottom edge of] the base bottom edge, the second section disposed at a second angle that is different than the first angle,

> wherein the third section of the longitudinal opening traverses a portion of the foot from [the bottom edge of] the base <u>bottom edge</u> to [the edge of ]the foot <u>edge</u>, the third section disposed at a third angle that is different than the first and second angles,
>
> wherein the longitudinal opening has first and second edges[, and
>
> wherein a width of the longitudinal opening increases when the first and second edges are pulled away from each other to enable the roof flashing to be installable around a pipe which is not capable of receiving the roof flashing over a top thereof] <u>such that when the first and second edges are pulled away from each other a width of the longitudinal opening increases to enable the roof flashing to be installable around a pipe which is not capable of receiving the roof flashing over a top thereof</u>.

Mot., Ex. 6 (RCE, Amendments to the Claims) at pp. 2-7. On December 19, 2018, the Patent Office again rejected many of Golden Rule's proposed amendments to the claims, but indicated that it might agree to claims that included the following *narrowing* language which is narrower than what was asserted in the instant litigation:

> **Allowable Subject Matter**
>
> 4. The following is a statement of reasons for the indication of allowable subject matter:
>
> Claims 16 and 17. The prior art of record does not disclose, singly or in combination, the recited combination of elements including "the first edge of the longitudinal opening includes a rectangular cross-section and a clip groove formed, in part, by a portion of a top surface of the foot, and wherein the second edge of the longitudinal opening includes a rounded top, a clip groove and a flap, the flap sized to fit against and over a top of the first edge of the longitudinal opening."

Mot., Ex. 7 (Non-Final Rejection to RCE) at pp. 2-5.

The Patent Office gave a deadline to Golden Rule to reply to its latest Office Action within 3 months. *See id.* at Office Action Summary. Under Patent Office Rules, however,

9

Golden Rule could seek an additional 3-month extension to respond to this latest Office Action no later than June 19, 2019. 37 C.F.R. § 1.136(a)(1).

      B.     *Ex Parte* **Reexaminations of the Asserted Patents.**

Counsel for Neverleak has informed Golden Rule that if this case is unable to settle in the near future, third-party manufacturer Aztec will be forced to file with the Patent Office requests for *ex parte* reexamination of each of the Asserted Patents due to the likelihood that the patents are invalid based on prior art that Neverleak cited in its invalidity contentions.[3] In an *ex parte* reexamination, anyone may request that the Patent Office make a determination: 1) whether there is "a substantial new question of patentability" based on prior art patents or printed publications, and 2) if so, to re-open examination of the patent to determine the validity of the claims. Mot., Ex. 8 (Patent Office Summary of *Ex Parte* Reexamination). By law, the Patent Office must decide whether to order reexamination of the patent within 3 months of the request, and if ordered, the reexamination must proceed with "special dispatch." *Id*. If a reexamination is ordered, "a reexamination proceeding will normally be conducted to its conclusion and the issuance of a reexamination certificate." *Id*.

The Patent Office has reported that it grants 92% of requests for *ex parte* reexamination and that for 79% of the reexamination certificates issued, the claims are either cancelled or amended. Mot., Ex. 9 (USPTO Statistics on Reexamination) at pp. 1-2. Thus, the likely outcome of the requests for reexamination of the Asserted Patents is that the claims will likely be cancelled or at minimum, amended. It therefore does not make sense to litigate, including arguing issues of claim construction, the issue of infringement of patent claims that are likely to

---

[3] If the Court determines that a declaration is needed concerning particular issues for the *ex parte* reexamination requests, counsel will endeavor to furnish the requested information.

be found invalid or change.

### IV. LEGAL STANDARD

District courts have the power to manage their docket and discretion to stay proceedings. *See Peavey Elecs. Corp. v. Music Grp. Servs. US, Inc.*, No. 3:13-CV-934-HTW-LRA, 2014 WL 12323520, at *2 (S.D. Miss. Mar. 10, 2014). "In exercising such discretion, courts consider the following factors to determine whether the benefits of a stay outweigh the burdens of a stay: "(1) whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party[;] (2) whether a stay will simplify the issues in question and trial of the case[;] and (3) whether discovery is complete and whether a trial date has been set." *Id*. A request to the Patent Office for reexamination of the validity of an asserted patent has the potential to greatly simplify issues in litigation, and thus, warrants staying litigation because if the patent claims are found invalid, it would be a waste of the court's resources to decide that issue. *Id*. at *5.

"Though a stay is never required, it may be particularly justified where the outcome of the [administrative proceeding] would be likely to assist the court in determining patent validity and, if the claims were canceled in the [administrative proceeding], would eliminate the need to try the infringement issue." *Norman IP Holdings, LLC v. TP-Link Techs., Co.*, No. 6:13-CV-384-JDL, 2014 WL 5035718, at *2 (E.D. Tex. Oct. 8, 2014). Moreover, even if some of the claims survive reexamination, a stay is still appropriate because of the "significant likelihood" the reexamination will streamline the issues in a patent infringement case. *See Veraseal LLC v. Wal-Mart Stores, Inc.*, No. 2:17-CV-00527-JRG, 2018 WL 2183235, at *2 (E.D. Tex. May 11, 2018).

11

V.    LEGAL ARGUMENT

    A.    **Golden Rule's Proposed Changes to the '002 Patent Claims and *Ex Parte* Reexamination Proceedings Warrant a Stay.**

Briefing and litigation concerning the Asserted Patents would be moot where the validity of the claims and scope of the claim language is unknown for the '002 patent that is in the same patent family as the '303 patent and '475 patent and which shares overlapping claim language. In first requesting in 2015 that the Patent Office broaden the scope of the '002 patent claims and recently asking the Patent Office through an RCE to reconsider this request after the Patent Office initially denied it, Golden Rule has tried time and again to modify the language of the '002 patent to read far differently from the claims that were asserted in this case. *See* Section III.A., *supra*. Further, the Patent Office's continued rejections of these broadening amendments shows that that if anything, the '002 patent claims are likely to end up narrower (assuming the proposed claims are not found invalid) in scope than what was asserted in this litigation. *See id*., *supra*. If this litigation is not stayed, the parties and the Court will expend unnecessary resources litigating questions regarding the validity, scope, and infringement of '002 patent claim language that Patent Office proceedings have shown are likely to change even if not found invalid.

In addition to changes to the '002 patent claim language prompted by Golden Rule, as previously indicated, if this case does not settle soon, the manufacturer of the accused roof flashings, Aztec, will be forced to file requests with the Patent Office for *ex parte* reexamination of the claims of each of the Asserted Patents, not just the '002 patent claims. The Patent Office is likely to grant those requests and after reexamining the Asserted Patents, is likely to cancel the claims or at minimum, amend the claims from what was asserted in this litigation. In fact, the latest statistics from the Patent Office show that there is a 92% chance that the Patent Office will

12

grant the requests to examine the validity of the claims and that there is a 79% chance that the outcome of the reexamination will result in all of the claims being cancelled or amended. Mot., Ex. 9. Thus, a stay pending reexamination proceedings will simplify the issues in question and trial of this case. *See Peavey Elecs. Corp.*, 2014 WL 12323520, at *2.

Ultimately, Golden Rule seeks a determination in this case whether Neverleak infringes claims of the Asserted Patents, but this question is entirely moot if the asserted claims are found invalid. *See Peavey Elecs. Corp.*, 2014 WL 12323520, at *4 ("The resolution of this case greatly depends upon whether the '052 patent was valid. If valid, defendant may have infringed plaintiff's patent; if invalid, defendant is not liable for patent infringement"). A stay that allows the reexamination process to complete will simplify the issues before the Court by either eliminating entire claims as invalid or presenting new claim language that will need to be considered.

Further, a stay will not unduly prejudice or present a clear tactical disadvantage to Golden Rule. *See Peavey Elecs. Corp.*, 2014 WL 12323520, at *2. The close of fact discovery ends on July 12, 2019. Dkt. 24. Trial is set for August 10, 2020. *Id*. The parties have not yet briefed claim construction issues, no depositions have been taken, and there has been no expert discovery. Further, reexaminations must be conducted by the Patent Office with "special dispatch." Mot., Ex. 8 (Patent Office Summary of *Ex Parte* Reexamination). Thus, a stay at this early stage is appropriate.

Regarding Golden Rule's copyright infringement allegation, a stay will not unduly prejudice any rights Golden Rule has regarding that allegation because that cause of action is barred by statute. In the Fifth Circuit, copyright claims have a three-year statute of limitations that begins "when the injured party knew or had reason to know of his injury." 17 U.S.C. §

13

507(b); *Jordan v. Sony BMG Music Entm't, Inc.*, No. CIVAH-06-1673, 2010 WL 1404094, at *2 (S.D. Tex. Apr. 1, 2010). The Complaint alleges injury based on a photograph that was faxed on June 9, 2011, which is more than six years before Golden Rule filed this case. Dkt. 1 (Complaint) ¶ 45 & Ex. F to Complaint. Also, Golden Rule's prayer for statutory damages and attorney's fees is barred by the Copyright Act, because "no award of statutory damages or attorney's fees…shall be made for—(1) any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work." 17 U.S.C. § 412. According to the Complaint, the effective date of registration of the asserted copyright is May 15, 2017 (Dkt. 1-1), which is approximately six (6) years after the supposed first publication of the June 2011 facsimile. Thus, a stay will not unduly prejudice or present a clear tactical disadvantage to Golden Rule which is barred in the first place from seeking redress on its copyright cause of action.

The last factor in considering a motion to stay proceedings—whether discovery is complete and whether a trial date has been set—favors a stay. *See Peavey Elecs. Corp.*, 2014 WL 12323520, at *2 and *Veraseal*, 2018 WL 2183235, at *2. As previously discussed, fact discovery is not concluded and is not set to close until July 2019 and trial is not scheduled until August 2020. Thus, a stay is appropriate at this time. *See id.* (granting a stay despite the close of discovery and the setting of trial dates three times).

VI. **CONCLUSION**

For the foregoing reasons, Neverleak respectfully requests the Court stay this litigation pending resolution of the reissue application for U.S. Patent No. 8,534,002 and the *ex parte* reexamination of the Asserted Patents.

THIS, the 4th day of January, 2019.

                                              Respectfully submitted,

                                              **THE NEVERLEAK COMPANY, LP**

                                              */s/ Kate M. Embry*
                                              J. CAL MAYO, JR. (MB No. 8492)
                                              KATE M. EMBRY (MB No. 102731)
                                              *Its Attorneys*

OF COUNSEL:

MAYO MALLETTE PLLC
2094 Old Taylor Road
5 University Office Park
Post Office Box 1456
Oxford, Mississippi 38655
Telephone:  (662) 236-0055
Facsimile:  (662) 236-0035
cmayo@mayomallette.com
kembry@mayomallette.com

KILPATRICK TOWNSEND & STOCKTON LLP
Megan M. Chung (Admitted *Pro Hac Vice*)
Erwin L. Cena (Admitted *Pro Hac Vice*)
12255 El Camino Real, Suite 250
San Diego, California  92130
Telephone:  (858) 350-6100
Facsimile:  (858) 350-6111
mchung@kilpatricktownsend.com
ecena@kilpatricktownsend.com