**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**

| | | |
|---|---|---|
| **GOLDEN RULE FASTENERS INC.,** | } | |
| | } | |
| **Plaintiffs,** | } | |
| | } | **Civil Action No.:** |
| **vs.** | } | **3:17-cv-249-MPM-JMV** |
| | } | |
| **THE NEVERLEAK COMPANY, LP,** | } | |
| | } | |
| **Defendant.** | } | |

**PLAINTIFF'S OPPOSITION TO**
**THE NEVERLEAK COMPANY, L.P.'S**
**MOTION TO STAY LITIGATION [Dkt. No. 39]**

Plaintiff GOLDEN RULE FASTENERS INC. ("Golden Rule") hereby opposes the Motion To Stay Litigation (Dkt. No. 39; "Motion to Stay") and its Memorandum in support (Dkt. No. 40) that was filed by Defendant THE NEVERLEAK COMPANY, LP ("Neverleak") on the day the Parties were to exchange proposed claim constructions.

# TABLE OF CONTENTS

I.     **BACKGROUND** ................................................................................. 1

II.    **LEGAL STANDARD** ........................................................................ 2

III.   **ARGUMENT** ................................................................................... 3

     A.   NEVERLEAK'S MOTION TO STAY SEEKS A TACTICAL ADVANTAGE AND PREJUDICES GOLDEN RULE. ......................................................................... 4

     B.   A STAY WILL NOT SIMPLIFY THE TRIAL OR ISSUES IN QUESTION. ............................ 7

     C.   DISCOVERY HAS ADVANCED AND A TRIAL DATE IS SET. ............................................. 13

     D.   THE CASES CITED BY NEVERLEAK IN SUPPORT OF ITS MOTION TO STAY ARE NOT ANALOGOUS TO THE FACTS HERE. ........................................................... 15

IV.   **CONCLUSION** ............................................................................... 16

N.D. Miss. No. 3:17-cv-249-MPM-JMV                  Page |ii

**PLAINTIFF'S OPPOSITION TO THE NEVERLEAK COMPANY, L.P.'S MOTION TO STAY LITIGATION [Dkt. No. 39]**

# TABLE OF AUTHORITIES

## Cases

*Clinton v. Jones*, 520 U.S. 681 (1997) ........................................................................ 2

*Ethicon, Inc. v. Quigg*, 849 F.2d 1422 (Fed. Cir. 1988) ........................................ 2, 12

*Hill-Rom Servs. v. Stryker Corp.*, 755 F.3d 1367 (Fed. Cir. 2014) .......................... 9, 11

*KLA-Tencor Corp. v. Nanometrics, Inc.*, C 05-03116 JSW, 2006 WL 708661 (N.D. Cal. 2006) . 5

*Landis v. N. Am. Co.*, 299 U.S. 248 (1936) ................................................................ 2

*Markman v. Westview Instruments*, 517 U.S. 370 (1996) ............................................ 3

*NFC Tech. LLC v. HTC Am., Inc.*, No. 2:13-CV-1058-WCB, 2015 U.S. Dist. LEXIS 29573
    (E.D. Tex. Mar. 11, 2015) ............................................................................. 3, 5, 14, 16

*Norman IP Holdings, LLC v. TP-Link Techs., Co.*, No. 6:13-CV-384-JDL, 2014 U.S. Dist.
    LEXIS 143426, 2014 WL 5035718 (E.D. Tex. Oct. 8, 2014) ........................................ 14, 15

*Oatis v. 21st Mortgage*, No. 1:16-cv-00228-GHD-DAS, 2017 U.S. Dist. LEXIS 115961 (N.D.
    Miss. July 25, 2017) ........................................................................................ 2, 16

*Omega Eng'g., Inc. v. Raytek Corp.*, 334 F.3d 1314 (Fed. Cir. 2003) ............................ 9

*Openwave Sys., Inc. v. Apple Inc.*, 808 F.3d 509 (Fed. Cir. 2015) .......................... 9, 10

*Peavey Elecs. Corp. v. Music Grp. Servs. US, Inc.*, No. 3:13-CV-934-HTWLRA, 2014 WL
    12323520 (S.D. Miss. Mar. 10, 2014) ........................................................... 5, 14, 15

*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (*en banc*) .............................. 9

*Poly-America, L.P. v. API Indus., Inc.*, 839 F.3d 1131 (Fed. Cir. 2016) ......................... 8

*Soverain Software LLC v. Amazon.com, Inc.*, 356 F.Supp.2d 660 (E.D. Tex. 2005) ........... passim

*United States v. Colomb*, 419 F.3d 292 (5th Cir. 2005) ............................................ 2

*Veraseal LLC v. Wal-Mart Stores, Inc.*, No. 2:17-CV-00527-JRG, 2018 U.S. Dist. LEXIS 79479,
    2018 WL 2183235 (E.D. Tex. May 11, 2018) ................................................... 14, 16

## Rules

Fed. R. Civ. Proc. 1 ....................................................................................... 14

With respect to this Court's schedule (*see* Dkt. Nos. 24, 33, 34, 38) and Golden Rule's obligations therein, Neverleak's Motion to Stay could not have come at a worse time. Given the context and background of this case[1] in combination with Neverleak's newly-revealed strategy, the timing is highly suspect, suggesting a dilatory tactical maneuver designed to avoid its obligations a day after a major deadline to which the Parties agreed (exchange of claim terms and constructions) and days before one Golden Rule's most important deadlines in this case—its opening claim construction brief. *See* Dkt. Nos. 45, pp. 19-23. Moreover, Neverleak's Motion to Stay fails on the merits, in particularly because it depends on a reissue that has been active since 2015 and actions by a third party that may or may not occur in the future. In any event, the Motion to Stay is untimely and has the effect of prejudicing Golden Rule and stopping a case for events that will take over three years to be finalized, which is long after the trial scheduled in this case.

## I.    BACKGROUND

Neverleak's Motion to Stay was filed at just the right time to completely upset the schedule entered by this Court, even after it had been amended several times at the request of the Parties without any hint of the reissue causing issues on claim construction or any reexamination procedures planned by a third party. *See* Dkt. Nos. 30, 33, 34, 37, 38). After having strung Golden Rule along in settlement negotiations, giving Golden Rule inadequate invalidity contentions, reneging on an agreement to exchange proposed claim constructions on the agreed-to date, and slow-playing Golden Rule on its Motion to Compel (Dkt. Nos. 44, 45) by being unavailable to execute the Good Faith Certificate, Neverleak somehow found the time to prepare and file its Motion to Stay the entire case.

---

[1]    The events that have lead this matter to this point are described in considerable detail in Golden Rule's Motion to Compel. *See* Dkt. No. 45, pp. 1-4, 19-23.

**PLAINTIFF'S OPPOSITION TO THE NEVERLEAK COMPANY, L.P.'S MOTION TO STAY
LITIGATION [Dkt. No. 39]**

Because of Neverleak's refusal to abide by its obligations under this Court's case management schedule (to which Neverleak agreed and participated in its establishment), Golden Rule moved to compel Neverleak's compliance with its obligations to provide proposed claim constructions and adequate invalidity contentions. *See* Dkt. Nos. 44, 45 ("Motion to Compel"). Because of the timing of Neverleak's Motion to Stay, Golden Rule also moved to modify the claim construction briefing schedule to mitigate the prejudice caused by Neverleak's Motion to Stay and refusal to serve claim terms/constructions and amend its invalidity contentions. *See id.*

## II.    LEGAL STANDARD

The Supreme Court has made clear that "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis v. N. Am. Co.*, 299 U.S. 248, 254-255 (1936). The broad discretion given to courts to grant a stay request is "incident to its power to control its own docket." *Oatis v. 21st Mortgage*, No. 1:16-cv-00228-GHD-DAS, 2017 U.S. Dist. LEXIS 115961, *4-*5 (N.D. Miss. July 25, 2017) (quoting *Clinton v. Jones*, 520 U.S. 681, 706 (1997)); *see also United States v. Colomb*, 419 F.3d 292, 299 (5th Cir. 2005). This discretion includes re-examinations by the USPTO. *See Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426-1427 (Fed. Cir. 1988) ("Courts have inherent power to manage their dockets and stay proceedings, including the authority to order a stay pending conclusion of a PTO reexamination." (internal citation omitted)). "In deciding whether to stay litigation pending reexamination, courts typically consider: (1) whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party, (2) whether a stay will simplify the issues in question and trial of the case, and (3) whether discovery is complete and whether a trial date has been set." *Soverain Software LLC v. Amazon.com, Inc.*, 356 F.Supp.2d 660, 662 (E.D. Tex. 2005). Courts

use these factors to "determine whether the benefits of a stay outweigh the inherent costs of postponing resolution of the litigation." *NFC Tech. LLC v. HTC Am., Inc.*, No. 2:13-CV-1058-WCB, 2015 U.S. Dist. LEXIS 29573, *5 (E.D. Tex. Mar. 11, 2015)

## III.   ARGUMENT

The fundamental substantive flaw in Neverleak's Motion to Stay is that it is based on a false premise, namely that Golden Rule's positions on the construction of claim terms represent a moving target and that Neverleak cannot respond "[d]ue to uncertainty in the patent claim terms at issue in this case." Motion to Stay, p. 1.   However, neither of the two things pointed to by Neverleak—the reissue and future reexaminations—will alter claim construction in any meaningful way, and even if it did, that can be addressed now.   This case is at the claim construction stage where the Parties' positions must be presented to the Court who will then determine how each relevant term will be construed. *See Markman v. Westview Instruments*, 517 U.S. 370, 372 (1996) (claim construction is a question of law for the court).   Therefore, Golden Rule's positions will soon be fixed, as will those of Neverleak.   The Parties are free to make any arguments based on public record (from the reissue) that they like because those are all available to the Parties.

All that said, Neverleak's arguments should be rejected for a number of reasons.   At the outset, the argument that Golden Rule's positions on the construction of claim terms are still in flux is incorrect because there have been no statements made to the USTPO that modify any of the claim terms proposed for construction—there have merely been limitations ***added*** to the claims terms.   Even then, those terms are all terms that are already described in the specification.   Moreover*,* Neverleak asks this Court to stay a case on the representation that a third party might file a challenge with the USPTO, but this has not happened and may never happen.   And even if it happened today, there would be no final resolution of those proceedings until long after trial in

**PLAINTIFF'S OPPOSITION TO THE NEVERLEAK COMPANY, L.P.'S MOTION TO STAY LITIGATION [Dkt. No. 39]**

this case because they are being filed over a year into this litigation. Finally, the timing of the filing of the Motion to Stay is highly suspect given that it comes so close to the due dates for claim construction briefing and Golden Rule was trying to file its Motion to Compel with the Court. In the end, Neverleak has used the Motion to Stay as an excuse to abdicate its obligations in this case, thereby unilaterally granting itself a stay when the Court has not even ruled on Neverleak's untimely motion. This dilatory behavior should not be rewarded.

### A. NEVERLEAK'S MOTION TO STAY SEEKS A TACTICAL ADVANTAGE AND PREJUDICES GOLDEN RULE.

The first factor for the Court to consider is "whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party." *Soverain Software LLC*, 356 F.Supp.2d at 662. Here, both considerations in this factor operate to the detriment of Golden Rule, and hence, weigh against granting Neverleak's Motion to Stay. ***First***, Golden Rule is unquestionably prejudiced by Neverleak's tactic. Golden Rule served its proposed claim constructions on the day the Parties agreed to do so, Neverleak did not. *See* Motion to Compel, Ex. C (Dkt. No. 45-4). By filing the Motion to Stay and abdicating its responsibilities regarding claim construction, Neverleak knew that it would put Golden Rule in a position that it would have to move forward with its opening claim construction brief without sufficient information. That put Golden Rule in the dilemma of making a Hobson's Choice: filing a meaningless claim construction brief or moving to compel and for a continuance. If Golden Rule filed its opening brief, it would not have the terms Neverleak thinks should be construed or its positions and evidence to support those positions, so Golden Rule would be left filing a motion with only half of the information it needed for the brief. Also, Golden Rule would waste effort in its brief on terms on which the Parties may ultimately agree, which would waste party and Court resources. The only real choice then was for Golden Rule to file its Motion to Compel and continue deadline, which in itself has prejudiced

**PLAINTIFF'S OPPOSITION TO THE NEVERLEAK COMPANY, L.P.'S MOTION TO STAY**
**LITIGATION [Dkt. No. 39]**

Golden Rule—it should not have to put the work in to brief the reasons Neverleak should participate in claim construction.

Moreover, this case is a year into its prosecution, Golden Rule has done damages discovery, an on-site inspection of damages with an expert, it has served discovery, and Neverleak has represented that it has completed technical discovery in the case (*i.e.,* Neverleak represented that it had given Golden Rule all documents it had related to the product). After claim construction (once all issues are crystallized), Golden Rule plans to take its depositions, and then prepare for trial. If Neverleak was going to have some third-party file reexaminations and then seek a stay, it should have done that promptly, not waited until a year into the litigation. Moreover, the Parties have trial in about eighteen months (August of 2020 – *see* Dkt. No. 24), and any reexamination (even excluding appeals) would not be complete for two years after the reexaminations are filed. This sort of behavior has been deemed to cause prejudice. *See Peavey Elecs. Corp. v. Music Grp. Servs. US, Inc.*, No. 3:13-CV-934-HTWLRA, 2014 WL 12323520 (S.D. Miss. Mar. 10, 2014) (Slip Op. at 5: "Courts have found prejudice where evidence shows that a reexamination request is clearly a delay tactic." citing *KLA-Tencor Corp. v. Nanometrics, Inc.*, C 05-03116 JSW, 2006 WL 708661 (N.D. Cal. 2006)). All the foregoing together constitutes prejudice to Golden Rule and is furthermore inconsistent with generally-accepted procedures. Indeed, "any delay in the vindication of patent rights is prejudicial to a patent owner . . . ." *NFC Tech. LLC*, 2015 U.S. Dist. LEXIS 29573 at *7)

**Second,** Neverleak's tactical decisions are also designed obtain an unfair advantage. Neverleak represented that it would not participate "brief[ing] claim construction issues"—in other words, it would not file its Responsive Claim Construction Brief—which would give Neverleak an inordinate amount of time to analyze and respond to Golden Rule's arguments, respond to them,

and consider their own arguments because they would not file a responsive brief until the Court ordered it. Additionally, the timing of Neverleak's Motion to Stay appears to have been chosen to prejudice Golden Rule by providing a tactical advantage to Neverleak. The Motion to Stay was filed late on the afternoon of Friday, January 4, 2019, week a week after claim terms were to be exchanged and three business days before Golden Rule's claim construction brief was due. *See* Dkt. Nos. 39 and 40. It also appears to have taken precedence to responding to repeated requests from Golden Rule to provide a Good Faith Certificate of Compliance for Golden Rule's planned Motion to Compel. Motion to Compel (Dkt. No. 45), pp. 21-23 (summarizing efforts to get Good Faith Certificate signed). As such, despite its purported goal of eliminating unnecessary work, Neverleak's Motion to Stay was really an excuse for it to avoid its obligations. And it did not save the Court or Golden Rule from unnecessary work. In fact, it multiplied the proceedings and created additional work and compressed briefing.

Moreover, the alleged reexaminations represent a belated attempt to get two bites at the "invalidity" apple. A year into this, Neverleak decided that it wants the USPTO to look at validity. At the same time, if the Motion to Stay were granted, Neverleak would again argue invalidity when the stay was lifted, but to this Court instead.

Finally, Neverleak's purported rationale for a stay—that Golden Rule's re-issue application leaves uncertainty as to what its claim constructions are—is a ruse designed to avoid sharing Neverleak's positions on schedule in the hope of getting a strategic edge. The re-issue application has been in the works since 2015, well before this case was filed. *See* Dkt. 45-6 (reissue application transmitted to the USPTO on or about September 16, 2015). At any time during the almost ten months this case has been pending, Neverleak could have requested a stay. Instead, it waited until a point in the case when a stay request would create chaos. The re-issue has nearly

run its course. At the January 8, 2019 hearing (Dkt. No. 42), as well as in its Motion to Stay, it made this point. *See* Motion to Stay, pp. 5-10. At this point, nearly everything Golden Rule could say to the USPTO that might be of use to Neverleak has been said. And regardless, limited and focused supplemental claim construction can resolve any issues later arising out of the re-issue. *See Soverain Software LLC*, 356 F.Supp.2d at 663 ("Some of the claims may change in this case, but the Court is of the opinion that the interests of justice will be better served by dealing with that contingency when and if it occurs, rather than putting this case indefinitely on hold."). This is not unusual.

Clearly, the Motion to Stay was a tactical decision by Neverleak to get an unfair advantage in this litigation, and the request for a stay has already prejudiced Golden Rule. Neverleak's posturing on the issue of a stay is illogical. Golden Rule's claim construction positions will become clear and fixed during claim construction. Neverleak has all the information available to allow it to take positions now. If Neverleak truly wanted to save time and effort, it would participate in the claim construction process instead filing a last-minute motion and abdicating its claim construction obligations. *See Soverain Software LLC*, 356 F.Supp.2d at 663 ("Firm trial settings resolve cases and reduce litigation costs.").

### B. A STAY WILL NOT SIMPLIFY THE TRIAL OR ISSUES IN QUESTION.

The second factor is "whether a stay will simplify the issues in question and trial of the case." *Soverain Software LLC*, 356 F.Supp.2d at 662. Neverleak points to two reasons that it claims a stay will simplify the issues here: the reissue proceedings and the hypothetical third party reexaminations. ***First,*** the '002 Patent has been involved in a reissue long before this case was filed in December of last year—since September of 2015. *See* Motion to Compel, <u>Ex. E</u> (Dkt. No. 45-6, "Reissue Patent Application Transmittal," dated September 16, 2015). In the prior year of litigation, the reissue of the '002 Patent was never raised as an issue that affected claim

construction, and that is despite the Parties filing for two extensions of claim construction-related deadlines. *See,* Motion to Compel (Dkt. No. 45), Section I.A. If this were a real issue preventing claim construction and the case from going forward, Neverleak surely would have raised this before the morning of the Parties' first claim construction related deadline. *See* Motion to Compel, Ex. B (Dkt. No. 45-3), at pp. 3-4.

*Second*, and based on the arguments made during the telephonic hearing on January 8, 2019 (Dkt. No. 42), it also appears that Neverleak contends it cannot brief claim construction because Golden Rule allegedly has made statements to the USTPO changing the definitions of the proposed claim terms at issue in this litigation. This is untrue, as shown by the record of arguments made by Golden Rule to the USPTO. Golden Rule provided twelve terms that it contends needs construction by the Court. *See* Motion to Compel, Ex. C (Dkt. No. 45-04, email with "Preliminary Constructions"), at pp. 3-4. There are many overlapping claim terms in the '303 Patent, '475 Patent, and '002 Patent, and there are no USPTO proceedings with the USPTO with respect to the '303 or '475 Patents. Only a single term that Golden Rule has proposed for construction (the word "angle") is exclusively in the '002 Patent, and the other eleven are in all three Patents-in-Suit. *See id.* (column 2, "Claim Locations for Terms"). That means that regardless of the outcome of the '002 Patent reissue, those terms need to be construed and are independently in the case regardless of the '002 Patent.

Moreover, Golden Rule has not made any statements to the USPTO that would modify the meaning of any claim term presented for construction. The Federal Circuit has made clear that courts are to "depart from the plain and ordinary meaning in only two instances." *Poly-America, L.P. v. API Indus., Inc.*, 839 F.3d 1131, 1136 (Fed. Cir. 2016). "The first is when a patentee acts as his own lexicographer." *Id.* "The second is when the patentee disavows the full scope of the

claim term in the specification or during prosecution." *Id.* "The standards for finding lexicography and disavowal are exacting." *Hill-Rom Servs. v. Stryker Corp.*, 755 F.3d 1367, 1371 (Fed. Cir. 2014). "'To act as its own lexicographer, a patentee must clearly set forth a definition of the disputed claim term other than its plain and ordinary meaning' and must 'clearly express an intent to redefine the term.'" *Id.* There is nothing close to any such definition provided in the representations made by Golden Rule in the reissue. *See, generally,* Motion to Compel, Exhibit F (Dkt. No. 45-7; compilation, in order of date sent to the USPTO, of all argument presented to the USPTO in the reissue).

To prove "disavowal" of claim scope, Neverleak must provide "clear and unequivocal evidence that the claimed invention includes or does not include a particular feature." *See Openwave Sys., Inc. v. Apple Inc.*, 808 F.3d 509, 513-514 (Fed. Cir. 2015). Disavowal can be effectuated by language in the specification or the prosecution history. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1316-1317 (Fed. Cir. 2005) (*en banc*). Ambiguous language alone cannot support disavowal. *Omega Eng'g., Inc. v. Raytek Corp.*, 334 F.3d 1314, 1324 (Fed. Cir. 2003).

The only thing that can change in a reissue is the claims, so the specification of the '002 Patent will never change in the reissue. Accordingly, no disavowal argument with respect to the reissue can flow from the specification. So Neverleak must argue that Golden Rule disavowed claim scope (*i.e.*, changed the meaning of the claim terms) in its responses to the USPTO in the reissue proceedings. Each of Golden Rule's arguments to the USPTO in the reissue are included as Exhibit F to the Motion to Compel. *See* Dkt. No. 45-7.[2] A review of the submission by Golden Rule to the USPTO show that no such "clear and unequivocal evidence that the claimed invention

---

[2]   Each set of arguments, are included in that exhibit in that order (and with page separators indicating what date each argument was made). Those arguments were made on September 16, 2015, November 18, 2016, and August 7, 2018. *Id.*

includes or does not include a particular feature" was made with respect to any of the 12 terms at issue. *See Openwave Sys., Inc.*, 808 F.3d at 513-514. None of the arguments (or "Remarks" as they are called in patent parlance) modify the nature of any claim term in this case. *See* Motion to Compel, Ex. F (Dkt. No. 45-7), at pp. Reissue-8 to 11, Reissue-22 to 28, Reissue-43-48) (each of the cited page ranges being the places where any argument was made).

The only words that is provided any definitional context in argument is the term "pitched roof" and "pitch." *See id.*, at p. Reissue-23.[3] The terms "pitched roof" and "pitch" were introduced in the claims of the '002 Patent in the November 18, 2016, amendment, but those terms were removed from the pending claims in the later August 7, 2018, amendment. *See id.*, at pp. Reissue-37 to 42 (amended claims), Reissue-43 (argument stating "the phrase 'at an angle for layering on a pitched shingle roof' is replaced with 'to a foot edge, said foot extending outwardly at an angle with a front portion of the foot extending downwardly from the base and a back portion of the foot extending upwardly from the base'"). That is also apparent from the body of Neverleak's brief where it provides the claim amendments. Motion to Stay, pp. 4-5, 7-9.[4]

In other words, none of the statements made in the reissue exclude any subject matter as being within the definition of "collar," "base," "foot," "longitudinal opening," "apex,"

---

[3]     Golden Rule represented to the USPTO that:

> a pitched roof as described in the '002 patent has a surface with a slope as an inherent feature of the pitched roof, as defined in the attached excerpts from McGraw-Hill Dictionary of Engineering (2d ed. 2002) ("pitched roof ... [is a] roof that has one or more surfaces with a slope greater than 10°") and McGraw-Hill Dictionary of Scientific and Technical Terms (3d ed. 1984) ("pitch. . . [is t]he inclination or degree of slope of an object or structure") and as shown in Figs. 1 and 6.

> *See id.*, at Reissue-23.

[4]     If Neverleak contends that the term "pitched roof" is now a part of every claim, Golden Rule would stipulate to that because it is Golden Rule's position that each claim provides that the inventions are to be used on a "pitched roof."

"elastomeric material," "angle," "section," "top edge/bottom edge," "annular grooves," "coupled," or "substantially rectangular shape." *See* Motion to Compel, Ex. C (Dkt. No. 45-4), pp. 3-4 (Golden Rule's preliminarily proposed terms). In the final analysis, Golden Rule's submissions do not even approach statements that would qualify as disavowal under the "exacting" standard Neverleak must prove with clear and convincing evidence for the subject claim terms. *See Hill-Rom Servs.*, 755 F.3d at 1371. The only thing that has happened in the reissue is that the submissions have ***added and taken away limitations*** (*i.e.,* elements) to the claims. *See* Motion to Compel, Ex. F (Dkt. No. 45-7), at pp. Reissue-3 to 8, Reissue-14 to 21, Reissue-37 to 42. To be sure, none of the subject terms for construction have been modified in a way that would constitute disavowal.

Regardless, even if Golden Rule had made statements that allegedly changed the meaning of the subject terms, Neverleak is free to argue that. The filings are all public, so it certainly has access to all of these filings, and they are attached to Golden Rule's Motion to Compel (Ex. F, Dkt. No. 45-7). After all, that is the point of claim construction, and if Neverleak can credibly argue that Golden Rule has disavowed claim scope before the USPTO, the only place it would do that is during claim construction. And if the USPTO allows claims with new terms in them as a result of the reissue, those claims would at worst have ***additional terms*** that may need to be construed at some point, and only if the Parties believe they need to be construed. Neverleak concedes that in its Motion to Stay. *See* Motion to Stay, pp. 12 ("if anything, the '002 patent claims are likely to end up narrower"). Nothing is wasted by proceeding to claim construction now because, at worst, the Parties may have to do limited supplemental briefing on one or two discrete additional terms, which is not abnormal in a patent case. *See Soverain Software LLC*, 356 F.Supp.2d at 663.

In summary, the only thing that could happen in the reissue is either (1) the claims stay the same or (2) additional limitations are added to the claim that were not previously there, in which case the Parties can later brief those discrete additional terms, if any. None of that warrants a stay.

**Third**, it is true that courts have granted requests to stay pending instituted re-examination requests that were already instituted and were filed early in a case. *See Ethicon, Inc.*, 849 F.2d at 1426-1427. However, that is not what we have here. Neverleak has only announced that a third party may be "forced" to file an *ex parte* reexamination of Golden Rule's patents with the United States Patent and Trademark Office ("USPTO") if the case does not settle soon. *See* Motion to Stay, pp. 10, 12. In other words, Neverleak asks this Court to stay a case on the off-chance that a non-party *might* file a challenge with the USPTO which *might* be granted at some future time. This threat is too speculative to justify a stay. *See Soverain Software LLC*, 356 F.Supp.2d at 663.

The reality is that neither Neverleak nor any third party has filed any reexamination procedures before the USPTO, and even if one did, there would be no final action on any such proceedings until approximately two years from now (*see* "How Long Does Patent Reexamination Really Take?," Ropes & Gray Patents Post-Grant blog, available at https://www.patentspostgrant.com/how-long-does-patent-reexamination-take/, which is long after the current trial date of August 10, 2020. *See* Dkt. No. 24-1. Even then, "it is quite disingenuous for [Neverleak] to argue that patent reexamination will be completed within the PTO's published time frame. Certainly, if the Office confirms or allows claims within that published time frame, [Neverleak] is not going to just walk away to resume the litigation, but appeal, likely up to the CAFC. CAFC pendency . . . likely adds another 8-12 months to a true 'conclusion.'" *Id.* In any event, the trial will long be over here before any reexamination procedure, even if filed today, would be complete.

Putting aside for the moment the fact that the reexaminations have not been filed, it is also speculative to say that this hypothetical reexamination request will lead to changes that effect the case. While Neverleak points to statistics (Motion to Stay, pp. 1-2, 10) that suggest that most reexamination requests are instituted (92%) and at least partially successful (79%), it leaves out the fact that reexamination requests by third parties are rarely successful. *See Soverain Software LLC*, 356 F.Supp.2d at 662 ("While reexamination would substantially simplify this case *if* the PTO finds that *all* allegedly infringed claims of any of the patents are *cancelled*, this historically happens in **only 12% of reexaminations requested by a third party**.") (emphasis added). In fact, the most recent statistics show that all claim are cancelled only 13% of the time when third parties file for a reexamination. *See* Motion to Stay, Ex. 9 (Dkt. No. 39-9), at p. 2 (the second page of the reexamination statistics cited by Neverleak).[5] Moreover, Neverleak has asked this Court to accept that its invalidity contentions justify waiting for the USPTO despite the fact they were not attached to the Motion to Stay for the Court to evaluate. *See* Motion to Stay, p. 10. As brought to the Court's attention in its Motion to Compel, Neverleak's invalidity positions are not sufficiently described to be able to evaluate, much less cause, a reexamination to be granted. *See* Dkt. 45, pp. 14-19. Neverleak does not even point out where, in each piece of art asserted, each limitation of the claims is. *See id.*

### C.   DISCOVERY HAS ADVANCED AND A TRIAL DATE IS SET.

The third factor is "whether discovery is complete and whether a trial date has been set." *Soverain Software LLC*, 356 F.Supp.2d at 662. While discovery is not "complete," it is certainly substantially complete from Golden Rule's perspective. Neverleak represented that it gave Golden

---

[5]   This percentage appears to be relatively unchanged over the entire 10 years of data provided by Neverleak. *See* Dkt. No. 39-9.

Rule all technical documents in its possession. It has also given Golden Rule the sales figures for the infringing products. Golden Rule even sent a forensic accountant to Neverleak's main office to evaluate and understand the sales figures given to Golden Rule. The only thing that remains is depositions and maybe some discrete additional discovery. Neverleak, on the other hand, has not served any discovery on Golden Rule.

While discovery is not complete, a trial date has been set in this case (August of 2020; *see* Dkt. No. 24) and Neverleak's proposed stay will surely interfere with this Court's ability to get this case to trial in three years and to adhere to the mandate of Fed. R. Civ. Proc. 1 to "secure the just, speedy, and inexpensive determination of every action and proceeding." Even if this factor somehow weighs slightly in favor of a stay due to Neverleak's failure to take discovery, it does not counteract the clear prejudice to Golden Rule identified above. Considering all the factors together, the clear conclusion is that a stay is not warranted. *See NFC Tech. LLC*, 2015 U.S. Dist. LEXIS 29573 at *5 ("courts determine whether the benefits of a stay outweigh the inherent costs of postponing resolution of the litigation."). As discussed *infra*, the cases cited by Neverleak where a stay was granted ***after*** reexamination proceedings were ***instituted*** (not just filed) and those were done at a much earlier stage of litigation. *See, Norman IP Holdings, LLC v. TP-Link Techs., Co.*, No. 6:13-CV-384-JDL, 2014 U.S. Dist. LEXIS 143426, *7-*9, 2014 WL 5035718 (E.D. Tex. Oct. 8, 2014); *Veraseal LLC v. Wal-Mart Stores, Inc.*, No. 2:17-CV-00527-JRG, 2018 U.S. Dist. LEXIS 79479, *3-*4, 2018 WL 2183235 (E.D. Tex. May 11, 2018). The Motion to Stay should be denied because it is nothing more than a last-minute ploy to shirk its responsibilities in this case and gain a strategic advantage. *See Peavey Elecs. Corp.*, 2014 WL 12323520 at Slip Op. p. 5).

**D. THE CASES CITED BY NEVERLEAK IN SUPPORT OF ITS MOTION TO STAY ARE NOT ANALOGOUS TO THE FACTS HERE.**

Neverleak cites to three cases that are easily distinguished from the situation here such their conclusions are not dispositive or even helpful. *First*, Neverleak points to *Peavey Elecs. Corp. v. Music Grp. Servs. US, Inc.* for the premise that "pending reexamination proceedings will simplify the issues in question and trial of this case." Motion to Stay, p. 13. What Neverleak neglects to point out is that the USPTO had *granted* the reexamination request after concluding that it met the standard of raising a substantial new question of patentability existed. *See Peavey Elecs. Corp.*, 2014 WL 12323520 at Slip Op. p. 3. Here, no reexamination request has even been filed, much less granted. And while the *Peavey* case resulted in a stay fairly late in the case (two years in), the motion to stay was granted because the reexaminations were filed shortly after a Federal Circuit decision issued that changed a key aspect of patent law that was relevant to the claims and so there was a good faith basis for the delay, and that was a major factor in granting a stay in that case. *See id*. No such change in law has happened here.

*Second*, Neverleak mentions in passing the *Norman IP Holdings, LLC v. TP-Link Techs., Co.* case, for the premise that a successful reexamination would be of assistance to the Court. *See* Motion to Stay, p. 11. Neverleak does not mention that the stay motion there was made before any substantive discovery and any claim construction positions were submitted, the reexamination request had already been granted, and several related claims had already been invalidated by other reexams and IPRs. *See Norman IP Holdings, LLC*, 2014 U.S. Dist. LEXIS 143426 at *7-*9. Again, this is not the posture here, and no reexaminations have been filed here. Under the facts here, a stay is not warranted for the reasons described above. *See id.* at *6 ("A stay pending an administrative proceeding is not automatic; rather, it must be based upon the circumstances of the individual case before the court.").

**Third**, Neverleak cites to the *Veraseal LLC v. Wal-Mart Stores, Inc*. case to claim that a stay pending a reexamination "will streamline the issues in a patent infringement case." Motion to Stay, p. 11. But, as with the other cases, in *Veraseal,* the motion to stay was filed within 10 days *after* the reexamination was instituted and was granted *after* a non-final action issued that rejected all relevant claims. *See Veraseal LLC*, 2018 U.S. Dist. LEXIS 79479 at *3-*4. As mentioned above, here there is no reexamination, much less one in which claims have been invalidated. The *Veraseal* case along with the other two cases cited by Neverleak are not similarly situated to the case here, and are, therefore not helpful.

While this Court has considerable discretion when considering a stay request (*see*, *Oatis*, 2017 U.S. Dist. LEXIS 115961 at*4-*5), the factors point away from granting Neverleak's Motion to Stay as any speculative benefits do not "outweigh the inherent costs of postponing resolution of the litigation." *NFC Tech. LLC*, 2015 U.S. Dist. LEXIS 29573 at *5.

## IV. CONCLUSION

For at least the reasons discussed above, this Court should deny Neverleak's Motion to Stay. As the filing of the Motion to Stay has caused delay to this Court's schedule, Golden Rule's motion to amend the schedule (Dkt. No. 44) should be granted.

Respectfully submitted:  <u>January 10, 2019</u>

<u>/s/ Erik S. Heninger</u> (MSB #100951)
ERIK S. HENINGER

<u>/s/ James F. McDonough, III</u>
JAMES F. MCDONOUGH, III

ATTORNEYS FOR PLAINTIFF

*Of Counsel:*

HENINGER GARRISON & DAVIS, LLC
2224 1st Avenue North
Birmingham, Alabama 35203
(205) 326-3336 (phone)
(205) 326-3332 (facsimile)

HENINGER GARRISON & DAVIS, LLC
3621 Vinings Slope, Suite 4320
Atlanta, GA  30339-3372
(404) 996-0864 (telephone)
(404) 547-5505 (facsimile)

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 10, 2019, I caused the foregoing document(s) to be filed

with the Court using the Court's electronic filing system, emailed, and/or mailed via U.S. Mail,

postage pre-paid, to the following Party or Parties of record:

MAYO MALLETTE PLLC
J. Cal Mayo, Jr.
Kate M. Embry
2094 Old Taylor Road
5 University Office Park
Post Office Box 1456
Oxford, Mississippi 38655


KILPATRICK TOWNSEND & STOCKTON LLP
Megan M. Chung (Admitted *Pro Hac Vice*)
Erwin L. Cena (Admitted *Pro Hac Vice*)
12255 El Camino Real, Suite 250
San Diego, California  92130

*/s/ Erik S. Heninger* (MSB #100951)
ERIK S. HENINGER

*/s/ James F. McDonough, III*
JAMES F. MCDONOUGH, III

ATTORNEYS FOR PLAINTIFF